UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

GARY FAULKENSON
a/k/a EVERTON HERON,

                               Petitioner,

**OPINION & ORDER**
04-CV-0080 (SJF)

           -against-

JAMES CONWAY, SUPERINTENDENT of the
ATTICA CORRECTIONAL FACILITY[1],

                           Respondent.
_____X

FEUERSTEIN, J.

I.      Introduction

      On October 1, 1997, *pro se* petitioner Gary Faulkenson ("Petitioner") was convicted by a jury in the County Court of the State of New York, Suffolk County, of five (5) counts of assault in the second degree and one (1) count of promoting prison contraband in the first degree. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the petition is denied in part and otherwise stayed pending further submissions and proceedings.

---

[1]James Conway, the named respondent in this action, was the superintendent of the facility where Petitioner was incarcerated when he filed his petition. However, given that Petitioner is now incarcerated in the Sing Sing Correctional Facility, the correct respondent is now Brian Fischer, the superintendent of the Sing Sing Correctional Facility. See 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interest of court efficiency, the Court will deem the petition amended to change the name of the respondent to Brian Fischer.

II.    Petitioner's Pleadings

A *pro se* plaintiff's submissions are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). To this end, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Faretta v. California, 422 U.S. 806 , 834 n. 36 (1975)

III.   Background

A.    Factual Background[2]

On December 6, 1995, Petitioner was involved in an altercation at the Suffolk County Correctional Facility, where he was serving a sentence for manslaughter in the first degree. Petitioner, inmate Michael Mitchell ("Mitchell"), and several corrections officers were injured during a fight which broke out while inmates were being moved to an outside yard. Corrections Officer Michael McCuen ("McCuen"), the only officer in the vicinity at the time, testified that Mitchell screamed, jumped out of line, and ran past him. Tr. 339.[3] McCuen stated that Petitioner followed Mitchell, pushing past McCuen, who tried to block his way. Tr. 341. McCuen described Petitioner as highly agitated with his fists clenched. Tr. 363. McCuen then saw Petitioner and Mitchell fighting. Tr. 341.

---

[2] These facts are taken from the underlying petition and the trial transcripts.
[3] "Tr." refers to pages in the trial transcript.

Thereafter, four (4) other officers responded to the scene. Officers Frederick Rahming ("Rahming") and John Santacroce ("Santacroce") were the first officers to arrive. Tr. 344. Rahming grabbed Petitioner from behind, and spun him away from Mitchell in an attempt to separate the fighting inmates. Tr. 389. Petitioner then came straight at Santacroce, striking him in the chest. Tr. 390, 514-15, 571. The two (2) officers then fell while subduing Petitioner. Tr. 391. Santacroce felt "shots" to his back and heard Officer Kevin Kumpa ("Kumpa") say that Petitioner had a shank in his possession. Tr. 391-92. Kumpa testified that Petitioner knocked him off balance, and knocked him down to the ground where his shoulder hit the cement floor. Tr. 578. Officer Russell Restivo ("Restivo") then arrived on the scene and helped to secure Petitioner. Tr. 394, 517, 612. During this process, Petitioner kicked Restivo's hand. Tr. 614. Petitioner struggled violently with the officers before being subdued. Tr. 390.

As a result of the altercation, Petitioner, Mitchell, and Officers Santacroce, Restivo, and Kumpa were injured. They were transported to Central Suffolk Hospital for treatment. Tr. 436. Dr. Chin Huy Chua ("Chua") testified that Mitchell suffered two (2) lacerations, one on the right side of his neck and the second on the left posterior of his back. Tr. 439. The lacerations were sutured and Mitchell was placed on antibiotics to prevent infection. Id. Chua testified that these types of injuries are consistent with a lot of plain and had to be caused by a sharp object. Tr. 430.

Chua also testified that Petitioner suffered a laceration of the right lower lip and a contusion of the right and left orbit. Tr. 441. Santacroce was diagnosed with a sprain to the

3

right hand, Tr. 443, Restivo was diagnosed with a sprain to the right hand and wrist, Tr. 445, and Kumpa was diagnosed with a sprain to the right shoulder. Tr. 446.

Dr. Mica H. Kaplan ("Kaplan") testified that he treated Santacroce on December 7, 1995. Tr. 494. Kaplan diagnosed Santacroce with contusions of the right hand and back muscles, and synovitis (inflammation) of the right finger which would be consistent with substantial pain. Id. Santacroce was out of work from December 7, 1995, until December 17, 1995, pursuant to Kaplan's orders. Tr. 499.

Dr. Chris Garenani testified that he treated Kumpa on December 11, 1995, and that Kumpa suffered from a right shoulder injury and possible rotator cuff injury. Tr. 663. Kumpa missed twenty (20) days of work and was in a lot of pain. Tr. 581.

Dr. Richard Hindes ("Hindes") testified that x-rays of Restivo's finger indicated a displaced fracture of the metacarpal. Tr. 321. Hindes testified that the injury would result in substantial pain. Tr . 342. Restivo was out of work for eight (8) weeks. Tr. 616.

B.     Procedural History

On October 1, 1997, Petitioner was convicted of two (2) counts of assault in the second degree as to Mitchell, three (3) counts of assault in the second degree as to Officers Santacroce, Restivo, and Kumpa, and one (1) count of promoting prison contraband in the first degree. On November 17, 1997, Petitioner was sentenced to a period of incarceration of fourteen (14) years. Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department on or about March 2, 2002. Petitioner claimed: 1) violation of New York Criminal Procedure Law ("N.Y.C.P.L.") § 30.30; 2) failure to prove injuries necessary to support the convictions for assault in the

second degree; 3) prosecutorial misconduct during summation; and 4) a harsh and excessive sentence. On July 1, 2002, the Second Department affirmed the conviction and held: 1) Petitioner was not denied his statutory right to a speedy trial; 2) his guilt was proven beyond a reasonable doubt; 3) the prosecution's summation was reasonable and did not require reversal; and 4) the sentence imposed was not excessive. See People v. Faulkenson, 745 N.Y.S.2d 453 (App. Div. 2d Dep't. 2002). Petitioner then sought leave to appeal to the New York Court of Appeals which was denied on October 3, 2002. See People v. Faulkenson, 98 N.Y.2d 768 (2002).

On December 22, 2003, Petitioner filed a petition for a writ of habeas corpus. On March 3, 2004, he requested that the Court hold his petition in abeyance while he sought collateral review in the state court. On April 8, 2004, the Court granted Petitioner's motion. On May 14, 2004, Petitioner filed a motion pursuant to N.Y.C.P.L. § 440.10 in the County Court of the State of New York, Suffolk County, alleging ineffective assistance of trial counsel, and requesting an evidentiary hearing. The court denied the motion without a hearing on August 12, 2004, finding that Petitioner's claims were barred under N.Y.C.P.L. § 440.10(3)(a) and, in any event, without merit. See People v. Faulkenson, Ind. No. 1508-96 (Aug. 12, 2004). On September 14, 2004, Petitioner sought leave to appeal to the Second Department. On October 26, 2004, permission to appeal to the Second Department was denied. See People v. Faulkenson, Ind. No. 1508-96 (App. Div. 2d Dep't. 2004). On November 9, 2004, Petitioner amended his petition for a writ of habeas corpus to include the ineffective assistance of counsel claim. Petitioner now moves for a writ of habeas corpus on three (3) grounds: 1) insufficiency of the evidence; 2) prosecutorial misconduct during

5

summation; and 3) ineffective assistance of counsel.  In the alternative, Petitioner requests that a hearing be conducted to properly determine the merits of his ineffective assistance of counsel claim.

## IV.    The AEDPA

The Anti Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs petitions of incarcerated state court defendants seeking federal habeas corpus relief.

### A.    Exhaustion

Prior to bringing a petition for habeas corpus relief in federal court, a petitioner "must exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the [prisoner].'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 808 (2d Cir. 2000) (citation omitted, insertions in original).  The exhaustion requirement mandates that a petitioner fairly present to the highest state court "both the factual and legal premises of the claim he asserts in federal court." Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (internal quotations and citation omitted).  A federal habeas corpus petition which  contains unexhausted claims should be dismissed,  Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), unless there is no longer a state forum available to a petitioner to present his constitutional claim, in which case the federal court shall deem the claim exhausted and deny the claim as if the state court had considered but denied the claim on the basis of a state procedural rule which the petitioner had failed to follow.  Coleman v. Thompson, 501 U.S. 727 (1991).

B.    Standard of Review

Pursuant to 28 U.S.C. § 2254(d) an application for a writ of habeas corpus that has met the procedural prerequisites

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Adjudication on the merits" requires a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural or other ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000); 28 U.S.C. § 2254(d)(1). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413; 28 U.S.C. § 2254(d)(1). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). Under the AEDPA, determination of the factual issues made by a

7

state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A federal habeas court need not engage in even this limited degree of review when the state court decision rests on independent and adequate state procedural grounds. Coleman v. Thompson, 501 U.S. at 750. A habeas court is procedurally barred from review of such claims. This rule applies even where a state court reaches the merits of a petitioner's claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision) (emphasis in original). However, this rule is not without exception. Generally, a claim otherwise procedurally barred may be reviewed by a federal court in the event that a habeas petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

V.    Analysis

A.    Sufficiency of the Evidence

Petitioner claims there was insufficient evidence of injury to support his assault convictions. The Second Department found that this claim was unpreserved for appellate review. See People v. Faulkenson, 745 N.Y.S.2d 453 (App. Div. 2d Dep't. 2002). The Second Department based its decision on an independent and adequate state procedural ground and Petitioner has not asserted any cause for his procedural default or demonstrated

8

that failure to consider the claim will result in a fundamental miscarriage of justice. Therefore, this claim is precluded from habeas review.

      B.     Prosecutorial Misconduct During the Course of Summation

Petitioner claims that the trial prosecutor's closing argument constituted prosecutorial misconduct which deprived him a fair trial. The Second Department found that the "majority" of Petitioner's challenges to the prosecutor's conduct at trial were unpreserved for appellate review because Petitioner did not timely object to errors challenged on appeal with sufficient specificity. See People v. Faulkenson, 745 N.Y.S.2d 453 (App. Div. 2d Dep't. 2002). The Second Department based its decision on an independent and adequate state procedural ground and Petitioner has not asserted any cause for his procedural default or demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. Therefore, the majority of this claim is precluded from habeas review.

Petitioner's counsel did object with sufficient specificity when the prosecutor stated during closing argument: "[W]e're here because of a fight over a food tray that Gary Faulkenson had with Michael Mitchell on December 5, 1995." Tr. 776. The objection was overruled. Tr. 777. The Second Department denied this aspect of Petitioner's appeal on the merits. See People v. Faulkenson, 745 N.Y.S.2d 453 (App. Div. 2d Dep't. 2002). Petitioner now claims that the prosecutor improperly raised inferences that were unsupported by the record.

A criminal defendant's right to a fair trial is mandated by the due process clause of the United States Constitution. Albright v. Oliver, 510 U.S. 266, 273 n. 6 (1994) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)). For habeas relief to be granted based on a claim of

9

prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

To succeed on his claim of prosecutorial misconduct, Petitioner must show "'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (quoting Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)). See Copeland v. Walker, 258 F. Supp. 2d 105, 131-32 (E.D.N.Y. 2003). Relevant factors to be considered include the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of defendant's conviction absent the prosecutor's objectionable remarks. Bentley, 41 F.3d at 824; Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990).

The record reflects that Mitchell testified to a "disagreement" or "problem" regarding food trays which took place the day before the incident. Tr. 460. In summation, the prosecutor used the word "fight" instead of the words "disagreement" or "problem." This does not qualify as misconduct. The prosecutor was not raising inferences based on evidence not in the record. Further, even if this was a mischaracterization of Mitchell's testimony, the trial judge took appropriate measures, instructing the jury that they were the sole judges of facts in the case. Tr. 808. The judge also charged the jury that any statement made by counsel in a summation was not evidence. Tr. 819. Finally, the evidence against Petitioner

10

was overwhelming. In sum, the prosecutor's summation did not result in a denial of due process.

C.    Ineffective Assistance of Counsel

Petitioner claims ineffective assistance of trial counsel. In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

On May 14, 2004, Petitioner moved to vacate his judgment of conviction pursuant to N.Y.C.P.L. §440.10 in the County Court of the State of New York, Suffolk County. Petitioner argued that he was denied effective assistance of counsel at plea negotiations because he had rejected a plea offer based upon his counsel's incorrect advice regarding his maximum sentencing exposure. The court denied the motion without a hearing on August 12, 2004. The court found that Petitioner's ineffective assistance claim was procedurally barred because "the defendant unjustifiably failed to raise this claim with due diligence prior to his direct appeal" and "due diligence requires defendant to raise the issue immediately after his sentence and before his direct appeal. See CPL §440.10(3)(a)." People v. Faulkenson, Ind. No. 1508-96, slip op. at 2-3 (Aug. 12, 2004). The court also found that Petitioner's petition lacked merit. Id. at 2. Since the state court denied Petitioner's claims in part as barred by §

11

440.10(3)(a), arguably federal habeas review is barred under the independent and adequate state ground doctrine. See Coleman, 501 U.S. at 729-30.

However, the adequacy of an alleged state procedural bar is itself a question of federal law, Lee v. Kemna, 534 U.S. 362, 375 (2002); Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999), and "a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." Id. (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). "When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review." Id. Here, the procedural ground found by the court fails to satisfy the adequacy standard because the court made an incorrect finding of a procedural default.

The court based its reasoning on N.Y.C.P.L. § 440.10(3)(a). N.Y.C.P.L. § 440.10(3)(a) provides:

> 3. Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when:
>
> (a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal. This paragraph does not apply to a motion based upon deprivation of the right to counsel at the trial or upon failure of the trial court to advise the defendant of such right[.]

"By its terms, this subsection [440.10(3)(a)] applies neither to matters that could not have been adduced 'prior to sentence' nor to 'a motion based upon deprivation of the right to counsel,' presumably including a motion based on ineffective assistance of counsel." Lopez v. Greener,

323 F. Supp. 2d 456, 465 (S.D.N.Y. 2004) aff'd, 159 Fed. Appx. 320 (2d Cir. 2005). Both of these exceptions are applicable here. First, facts in support of a claim of ineffective assistance of trial counsel usually cannot be adduced prior to sentence because, generally, the petitioner will still be represented by trial counsel, and no record of counsel's alleged errors or omissions will be available. Therefore, post-judgment attacks on trial counsel's assistance are generally made by a motion pursuant to N.Y.C.P.L. § 440.10. See People v. Brown, 45 N.Y.2d 852, 853-54 (1978) ("[I]n the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding."). Here, Petitioner could not have supplied a factual predicate for his claim prior to sentence because the basis for his claim did not arise until after he was sentenced. Further, he was still represented by the counsel he claimed to be ineffective. See People v. Reynolds, 766 N.Y.S.2d 142, 142 (App. Div. 3d Dep't. 2003) (since a "claim of ineffective assistance of counsel is based upon an alleged failure to provide proper advice concerning sentencing exposure . . . . is typically not demonstrable on the main record, it is properly raised within the context of a CPL 440.10 motion."). Second, the statute states that N.Y.C.P.L. § 440.10(3)(a) does not apply to a motion based upon deprivation of the right to counsel at trial. Petitioner's claim of a deprivation of effective assistance sufficiently alleges a deprivation of the right to counsel at trial in general. See Bolling v. Stinson, No. 97-CV-6721, 1999 WL 287733, at *3 (E.D.N.Y. May 5, 1999). Therefore, Petitioner's ineffective assistance of counsel claim is not procedurally barred under N.Y.C.P.L. § 440.10(3)(a).

In his § 440.10 motion to vacate the judgement, Petitioner contended that (before he was represented by the counsel at issue in this case) he was offered a pre-indictment plea

agreement including a sentence to run concurrently with the sentence he was then serving, which he rejected. He further contended that his trial counsel tried to negotiate a similar plea bargain but those efforts failed and he was offered a pre-trial plea bargain of five (5) to seven (7) years to run consecutively to the sentence he was then serving. Petitioner asserted that counsel misinformed him that his maximum exposure was seven (7) years of incarceration because the charges stemmed from a single incident and the sentences would run concurrently with each other. Petitioner contended that this misinformation persuaded him to reject the plea bargain and that, but for this misinformation, he would have pled guilty. Petitioner was actually facing a maximum sentence of twenty-eight (28) years, which could run consecutively to the sentence he was then serving. He was ultimately sentenced to a fourteen (14) year sentence to run consecutively to the sentence he was then serving. Petitioner was unable to obtain an affidavit from his trial counsel to support his motion.

In response, Respondent asserted that Petitioner was aware that he could be sentenced consecutively when he rejected his plea. Further, Respondent contended that the sentencing mandate set forth in New York Penal Law § 70.25.5(b) required a consecutive sentence for any assault in the second degree committed while a defendant is incarcerated and therefore Petitioner's claim that his attorney attempted to negotiate a plea bargain that was to run concurrently with his previous sentence was untenable. According to Respondent, any negotiations involved whether sentencing on each count of assault in the indictment would be consecutive or concurrent to each other count in the indictment, not to Petitioner's previous sentence. Respondent contended that Petitioner was offered and rejected a plea bargain that consisted of multiple consecutive sentences under the indictment and the testimony at the

14

speedy trial hearing and at Petitioner's sentencing contradicted Petitioner's claim that he did

not know his sentences would run consecutively.

Pursuant to N.Y.C.P.L. § 440.30(4), the court denied Petitioner's claim without

conducting a hearing. N.Y.C.P.L. § 440.30(4) provides as follows:

> 4. Upon considering the merits of the motion [to vacate a judgment], the court may
> deny it without conducting a hearing if
>> (a) The moving papers do not allege any ground constituting legal basis for the
>> motion; or
>> (b) The motion is based upon the existence or occurrence of facts and the
>> moving papers do not contain sworn allegations substantiating or tending to
>> substantiate all the essential facts, as required by subdivision one; or
>> (c) An allegation of fact essential to support the motion is conclusively refuted
>> by unquestionable documentary proof; or
>> (d) An allegation of fact essential to support the motion (i) is contradicted by a
>> court record or other official document, or is made solely by the defendant and
>> is unsupported by any other affidavit or evidence, and (ii) under these and all the
>> other circumstances attending the case, there is no reasonable possibility that
>> such allegation is true.

The court failed to specify which prong of § 440.30(4) it was relying on in making its decision

not to hold a hearing, but stated that, "a review of the record taken at both pre-trial hearings and

the sentencing refutes defendant's claim he was unaware of the consecutive sentences he was

to receive." People v. Faulkenson, Ind. No. 1508-96, slip op. at 3 (Aug. 12, 2004). Therefore,

it appears that the court was relying on § 440.30(4)(d) in denying Petitioner a hearing.

Because § 440.30(4) applies, by its own terms, only when a trial court denies a § 440.10

motion "[u]pon considering the merits," a denial based on § 440.30(4) is a decision on the

merits which does not serve as a procedural bar to a federal habeas claim. See e.g., Garcia v.

Portuondo, No. 03 Civ. 2458, 2003 WL 22510390, at *4 (S.D.N.Y. Nov. 4, 2003) aff'd in

relevant part 104 Fed. Appx. 776 (2d Cir. 2003); Lou v. Mantello, No. 98-CV-5542, 2001 WL

1152817, at *9 n. 9 (E.D.N.Y. Sept. 25, 2001).

15

The court found that a review of the record taken at both pre-trial hearings and the sentencing refuted Petitioner's claim he was unaware of the "consecutive sentences" he was to receive. However, the record of the pre-trial hearing and the sentencing do not refute Petitioner's claim. Further, the court failed to directly address the substance of Petitioner's argument. Petitioner's motion was not couched in terms of consecutive or concurrent sentences, but based on a claim that he allegedly rejected a plea deal of five (5) to seven (7) years because his counsel incorrectly advised him that his maximum sentencing exposure was only seven (7) years when the actual maximum sentence was twenty-eight (28) years and he received a fourteen (14) year sentence. There was no basis for the denial of a hearing on the issue. See N.Y.C.P.L. § 440.30(4)(d). The court's treatment of Petitioner's motion to vacate the judgment on grounds of ineffective assistance of counsel was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d)(2).

At the pre-trial hearing, the prosecutor testified that on June 26, 1996, Petitioner's counsel told her that Petitioner was interested in pleading guilty and asked if she could "offer concurrent time on the case." Speedy Trial Hearing, May 2, 1997, Page 17. The prosecutor responded that it was not available. Id. She told Petitioner's counsel that had Petitioner taken a plea in December 1995, he could have possibly gotten concurrent time. Id. Petitioner's counsel then asked if he could speak to the prosecutor's deputy bureau chief. Id. The prosecutor said that she did not mind and said that she would also speak to the deputy bureau chief. Id. Petitioner's counsel recalled this conversation but could not remember the exact date of the conversation. Id. at 109-110.

16

The prosecutor further testified that on August 12, 1996, she told Petitioner's counsel that she spoke to the deputy bureau chief and that the state would not offer a plea agreement consisting of concurrent time. Id. at 27. She testified that "it specifically says that for these charges, it should be consecutive time, unless the court is going to find extenuating circumstances." Id.

This conversation is consistent with New York Penal Law § 70.25.5. Section 70.25.5 subsections (b) and (c) state the following:

> (b) Except as provided in paragraph (c)of this subdivision, when a person is convicted of
> assault in the second degree, as defined in subdivision seven of section 120.05 of this chapter, any definite, indeterminate or determinate term of imprisonment which may be imposed as a sentence upon such conviction shall run consecutively to any term of imprisonment which was previously imposed or which may be prospectively imposed where the person was confined within a detention facility at the time of the assault upon a charge which culminated in such sentence of imprisonment.

> (c) Notwithstanding the provisions of paragraphs (a) and (b) of this subdivision, a term of imprisonment imposed upon a conviction to assault in the second degree as defined in subdivision seven of section 120.05 of this chapter may run concurrently to any other term of imprisonment, in the interest of justice, provided the court sets forth in the record its reasons for imposing a concurrent sentence. Nothing in this section shall require the imposition of a sentence of imprisonment where it is not otherwise required by law.

The prosecutor further testified that on August 19, 1996, the court asked Petitioner's counsel to speak with his client to see whether or not he wanted to accept a plea bargain. Id. at 32.

Petitioner's counsel testified that the plea offer from the prosecutor on August 12, 1996, entailed several years of consecutive time and that Petitioner was not interested in taking that plea. Id. at 115. Petitioner's counsel further testified that on October 3, 1996, an offer containing consecutive time was rejected. Id. at 102.

17

A review of the record taken at sentencing reveals that Petitioner stated that he had been offered a plea bargain consisting of a concurrent sentence and that he had rejected it. He also remarked that he knew the court would impose consecutive time. Sentencing Hearing, November 17, 1997, Pages 21-22.

It is unclear whether the references to "concurrent time" refer to time concurrent to the sentence Petitioner was then serving or the time involved with respect to sentencing on each count of assault in the indictment. New York Penal Law § 70.25.5(b), does not dictate the answer to this question because of the language of provision (c), the "interest of justice" provision.

Further, there is no evidence in the record that would support Respondent's contention that the plea offer consisted of multiple consecutive sentences under the indictment. The prosecutor's testimony at the speedy trial hearing did not pertain to the specifics of the State's proffered plea. Petitioner's counsel, on the other hand, testified that the plea offer entailed several years of consecutive time. This is consistent with Petitioner's argument. The record does not support the court's conclusion that Petitioner was aware of the "consecutive sentences" he faced.

Petitioner contends that on August 12, 1996, after being informed of the prosecutor's supervisors' refusal to consider any plea that entailed a concurrent sentence, his counsel informed him of a plea offer between five (5) and seven (7) years, which would run consecutively to his previously imposed sentence. According to Petitioner, at this time, his counsel advised him that any sentences imposed pursuant to the instant indictment would run concurrently *with each other*, since the charges derived from a single incident. This incorrect

18

calculation by counsel resulted in his mistaken belief that the maximum sentence would be seven (7) years, since the maximum on each charge contained in the indictment is seven (7) years. According to Petitioner, he had voiced to counsel his desire to plead guilty, but after being advised that the plea offer consisted of the maximum sentence or two (2) years less than the maximum sentence Petitioner thought he would face if he went to trial, he rejected the offer.

There is no evidence refuting Petitioner's claim that he was incorrectly advised of his maximum sentencing exposure by his trial counsel. As a result, it was unreasonable for the court to reject Petitioner's claim without first holding a hearing.

A criminal defendant is entitled to effective assistance of counsel at all critical stages in the criminal proceedings, including during plea negotiations. "The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case . . . [e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (citations and internal quotation marks omitted). "[I]t follows that '[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (quoting United States v. Day, 969 F.2d 39, 43) (3d Cir.1992) (internal alteration notation omitted). Where a trial attorney "grossly underestimat[es]" his client's sentencing exposure, the attorney has "breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plea to a charge appears desirable.'" Id. (quoting Boria, 99 F.3d at 496). To prevail on such an ineffective assistance of counsel claim, a defendant must show

19

that (1) the attorney failed to communicate a plea offer or failed to provide adequate advice about the plea and sentencing exposure, and (2) there is a reasonable probability that but for the attorney's deficient performance, the defendant would have accepted the plea offer. Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000).

Here, Petitioner alleges that his trial counsel failed to provide adequate advice about the plea offer in relation to his maximum sentencing exposure and that, but for counsel's alleged errors, he would have accepted the plea. While "courts have been skeptical of accepting a defendant's self-serving, post-conviction statements . . ." Gluzman v. United States, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000) (citation omitted); see also Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003), the record reflects that Petitioner was interested in pleading guilty and Petitioner's counsel was actively engaged in plea negotiations on his behalf. Further, Petitioner submitted two (2) supporting affidavits, one from his brother and the other from his sister, when he filed his § 440.10 motion. Both affidavits attest to Petitioner's desire to accept a plea offer. See Affidavit of Michelle Simms (Feb. 2, 2004); Affidavit of Everton Heron (Feb. 2, 2004). Petitioner has alleged a viable ineffective assistance of counsel claim.

The Second Circuit has stated that a "district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs." Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998) ( per curiam ). Therefore, counsel shall be given the opportunity to respond to Petitioner's claims regarding his representation, particularly the questions relating to the plea bargain he endeavored to obtain for Petitioner, the agreement that was ultimately offered by the

20

prosecutor, what he advised Petitioner regarding his maximum sentencing exposure, what he advised Petitioner regarding the plea offer, and any other information he deems relevant to the consideration of this issue. Counsel shall have until thirty (30) days after receiving this Order to file and serve this information in the form of an affidavit or brief. Respondent may also file additional submissions on these questions, if necessary, within this time period for the Court's consideration. After reading the submissions of the parties, the Court will decide whether an evidentiary hearing is necessary.

VI.     Conclusion

After reviewing the filings and the relevant portions of the record, Petitioner's petition for a writ of habeas corpus is DENIED with respect to Petitioner's sufficiency of the evidence and prosecutorial misconduct claims. Petitioner's ineffective assistance of counsel claim is stayed pending further submissions and proceedings.

IT IS SO ORDERED

Sandra J. Feuerstein
United State District Judge

Dated: January 10th, 2007
Central Islip, New York